## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DEMOCRACY FORWARD FOUNDATION,
1333 H Street, N.W.
Washington, D.C. 20005,

and

FOOD & WATER WATCH, INC.,
1616 P Street, N.W.
Washington, D.C. 20036,

     *Plaintiffs*,

vs.

THE WHITE HOUSE OFFICE OF
AMERICAN INNOVATION
1600 Pennsylvania Avenue. N.W.
Washington, D.C. 20500,

     *Defendant.*

Case No.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.     Plaintiffs Democracy Forward Foundation ("DFF") and Food & Water Watch, Inc. ("FWW") bring this action against Defendant the White House Office of American Innovation ("OAI"), to compel its compliance with the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").

2.     Established in March 2017, OAI has already performed a vast array of executive functions, from evaluating and directing the reform of federal information technology ("IT") systems and practices; drafting legislation related to technology and infrastructure policy; directing the reorganization of the General Services Administration ("GSA") to support federal

1

innovation initiatives end establish Centers of Excellence; and negotiating agreements between public and private entities.

3.     Plaintiffs' FOIA requests would shed light on how OAI has performed these functions, and developed and implemented policy in these areas.  For example, OAI played a significant role in the development of the Trump Administration's proposed infrastructure legislation—a plan that could result in hundreds of billions of dollars in public expenditures flowing to private industries and individuals with deep ties to the administration—developing 70 pages of non-public "infrastructure principles" that served as the foundation for that plan.

4.     Despite the obvious public interest and urgency in disclosing how the government developed this infrastructure policy, including the role of various government leaders and private individuals, OAI has not acknowledged or responded to Plaintiffs' FOIA requests, let alone produced responsive records, all in violation of the law.

5.     Defendant's failure to comply with their legal obligations requires Plaintiffs to seek judicial action to compel them to undertake a reasonable search and produce responsive, non-exempt records in a timely manner.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

7.     Venue is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)  because the Plaintiffs and Defendant are located in Washington, D.C. and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred here.

8.      Because Defendant has failed to comply with the applicable time limit provisions in FOIA, Plaintiffs are deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

**PARTIES**

9.      Plaintiff DFF is a not-for-profit organization incorporated under the laws of the District of Columbia and based in Washington, D.C.  DFF works to promote transparency and accountability in government, in part by educating the public on government actions and policies.

10.     Plaintiff FWW is a non-profit organization incorporated under the laws of the District of Columbia and based in Washington, D.C. FWW focuses on corporate and government accountability relating to food, water, and corporate overreach.  Its mission includes "champion[ing] healthy food and clean water for all."[1]  FWW has long worked on federal infrastructure policy, with a particular focus on how it can incentivize municipalities to turn over traditionally publicly run water and wastewater services to private companies.  FWW is an ardent opponent of such privatization because the organization's studies have shown that it results in rate increases, a lack of public accountability and transparency, higher operating costs, worse customer service, and less employment.

11.     Defendant OAI is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1) and is headquartered in Washington, D.C.  Defendant has possession, custody, and control of records to which Plaintiffs seek access.

---

[1] *About*,  Food & Water Watch,  https://www.foodandwaterwatch.org /about (last visited Feb. 13, 2018).

3

## FACTUAL ALLEGATIONS

I.      **OAI's Far-Reaching Structure and Mandate**

      12.      OAI was established by Presidential Memorandum in March 2017, in part to

"focus on implementing policies and scaling proven private-sector models to spur job creation

and innovation" and "ensure that America is ready to solve today's most intractable problems,

and is positioned to meet tomorrow's challenges and opportunities."[2]

      13.      The agency's sole function is not to advise and assist the President.

      14.      Rather, as set out in the President's memorandum, to achieve OAI's mission, it

> shall launch initiatives with a focus on innovation, coordinate implementation of
> any resulting plans, and create reports for the President setting forth policy
> recommendations. In carrying out these activities and producing these reports,
> the OAI shall gather information, ideas, and experiences from other parts of
> Government, from the private sector, and from other thought leaders and experts
> outside of the Federal Government.[3]

      15.      According to the White House's press announcement, the agency is to create

"task forces to focus on initiatives such as modernizing Government services and information

technology, improving services to veterans, creating transformational infrastructure projects,

implementing regulatory and process reforms, creating manufacturing jobs, addressing the drug

and opioid epidemic, and developing 'workforce of the future' programs."[4]

      16.      OAI operates as a distinct entity established within the White House Office.

---

[2] Memorandum from Donald J. Trump, President of the United States, to the Senior Advisor to
the President, et al. (Mar. 27, 2017), https://www.whitehouse.gov/presidential-
actions/presidential-memorandum-white-house-office-american-innovation/.
[3] *Id.* § 3.
[4] Press Release, President Donald J. Trump Announces the White House Office of Am.
Innovation (OAI), The White House (Mar. 27, 2017), https://www.whitehouse.gov/briefings-
statements/president-donald-j-trump-announces-white-house-office-american-innovation-oai/.

17.     The memorandum establishes a number of positions, and OAI's day-to-day team members include the following individuals, who serve in the following structure and perform the following functions:

    a.   Jared Kushner (the head of OAI);

    b.   Christopher Liddell (whose primary focus is federal IT modernization);

    c.   Reed Cordish (whose primary focus is workforce issues and infrastructure);

    d.   Matt Lira;

    e.   Josh Raffel (OAI's communications officer);

    f.   Avi Berkowitz (Kushner's assistant);

    g.   Cassidy Dumbauld (who performs research and manages OAI events); and

    h.   Quellie Moorehead (who also performs research and manages OAI events).

18.     OAI is intended to be a permanent body within the White House Office, and its work and agenda is intended to continue beyond the Trump Administration.

19.     OAI meets daily with other government entities to develop policy, including the government's infrastructure plan.  OAI also conducts weekly team meetings to discuss ongoing projects.

20.     These OAI staff members perform distinct projects solely for OAI.

21.     OAI is designed to not involve itself in the White House's day-to-day operations, so that it can take a more strategic approach to projects.

22.     The Memorandum establishing OAI does not indicate that the President needs to approve of OAI's policies or initiatives, nor that the President would regularly consult with or interact with OAI.

23.     OAI's head, Kushner, has indicated that he has not felt it necessary to report on its activities to the White House Chief of Staff.

## II.     OAI's Extensive Functions

24.     OAI's work includes at least the following: evaluating and directing the modernization of federal IT systems across agencies, developing and implementing federal infrastructure policy, establishing "Centers of Excellence" to implement technology changes within agencies, and negotiating deals between public and private sector entities.

### A.     Evaluating and directing the modernization of federal IT systems

25.     In June 2017, OAI launched the American Technology Council ("ATC").[5]

26.     Through ATC, OAI has taken the lead on developing and implementing technology policy across the federal government.  As part of this work, OAI staff members evaluate existing federal technology programs.

27.     In August 2017, ATC released a report ("ATC Report") identifying and evaluating shortcomings in current federal IT policy,[6] and concluding that "[d]ifficulties in agency prioritization of resources in support of IT modernization, ability to procure services quickly, and technical issues have resulted in an unwieldy and out-of-date Federal IT infrastructure incapable of operating with the agility and security that is required of a multibillion-dollar Federal IT enterprise."[7]

---

[5] The White House, *The American Technology Council Summit to Modernize Government Services*, June 21, 2017, https://www.whitehouse.gov/articles/american-technology-council-summit-modernize-government-services/.
[6] The White House, Report to the President on Federal IT Modernization (Aug. 30, 2017), https://itmodernization.cio.gov/assets/report/Report%20to%20the %20President%20on%20IT%20Modernization%20-%20Final.pdf.  ("ATC Report").
[7] *Id.* at 31.

28.     The ATC Report directed agencies to achieve certain objectives for federal IT systems, concluding that agencies must "move further towards a risk-based approach to securing their systems,"[8] and that "the Federal Government must shift towards a consolidated IT model."[9]

29.     The ATC Report laid out "Implementation Plans" for achieving these objectives and improving federal IT, including prescribing detailed agency actions to be taken after the report, for example:

 a. "Within 30 days of the date of issuance of this final report . . . OMB [Office of Management and Budget] will submit a data call to agencies requesting submission of both in-progress and pending projects for cloud migration."[10]

 b. "Within 90 days of the issuance of this final report . . . For Category 1 of projects above, agencies will be given approval to begin cloud migration by following their proposed migration plans.  GSA, DHS [Department of Homeland Security], OMB, and NSC [National Security Council] will require collection of metrics, which will be used to ensure that the proposed changes to policy do not introduce an unacceptable level of cybersecurity risk."[11]

 c. "Within 90 days of the issuance of this final report . . . For category 2 projects above, GSA, DHS, OMB, NSC, USDS [U.S. Digital Service], and other relevant parties will kick off a 90-day spring to validate particular case studies. The exact number of engagements will be driven by staffing considerations from these organizations, but will consist of at a minimum three test cases."[12]

30.     The ATC Report's directives are binding on the agencies.

31.     The President has not issued any order or memorandum requiring the agencies to undertake the steps described in the ATC Report.

---

[8] *Id.* at 7.

[9] *Id.* at 19.

[10] *Id.* at 12.

[11] *Id.* at 13.

[12] *Id.*

32.     OAI also helped to draft the Modernizing Government Technology Act to fund agency IT modernization.  The Modernizing Government Technology Act passed as part of the National Defense Authorization Act.

33.     OAI has worked at the Department of Veterans Affairs ("VA"), attempting to address interoperability issues between the VA's medical records systems and other private sector systems.

34.     Unlike voluntary, stakeholder driven efforts to improve interoperability of electronic health record systems, the VA's work with OAI is designed to produce mandatory implementable top-down standards from the VA.

35.     In the course of this work, Kushner facilitated the deployment of personnel by Defense Secretary Jim Mattis from the Department of Defense to the VA to assist in the OAI project.

36.     At the same time that OAI has taken charge of government-wide information and technology issues, the White House Office of Science and Technology Policy ("OSTP") has shrunken considerably.  OSTP staff has dropped to 45 staffers, a substantial decline from President Obama's OSTP, which had a staff of 135 people.  This is because, as one administration official put it: "[O]ther power centers in the administration have emerged to lessen its role, especially on the technology side," including OAI.[13]

37.     OSTP's powers mirror those that OAI has assumed in evaluating and modernizing federal IT systems. Those powers include:

---

[13] Lev Facher, *With Trump in the White House, Obama Science Experts Operate Shadow Network to Press Their Positions,* Stat News, Aug. 7, 2017, https://www.statnews.com/2017/08/07/white-house-ostp-obama-trump/.

a. "evaluate the scale, quality, and effectiveness of the Federal effort in science and technology and advise on appropriate actions;"[14]

b. "seek to define coherent approaches for applying science and technology to critical and emerging national and international problems and for promoting coordination of the scientific and technological responsibilities and programs of the Federal departments and agencies in the resolution of such problems;"[15]

c. "initiate studies and analyses, including systems analyses and technology assessments, of alternatives available for the resolution of critical and emerging national and international problems amenable to the contributions of science and technology and, insofar as possible, determine and compare probable costs, benefits, and impacts of such alternatives;"[16] and

d. "provide the President with periodic reviews of Federal statutes and administrative regulations of the various departments and agencies which affect research and development activities, both internally and in relation to the private sector, or which may interfere with desirable technological innovation, together with recommendations for their elimination, reform, or updating as appropriate[.]"[17]

38.     Under prior administrations, one of the ways that OSTP has fulfilled this mission was with the Office of the U.S. Chief Technology Officer ("CTO"), whose mission was "to ensure an open, digital, and data-driven government[.]"[18]  The Office of the CTO "work[ed] closely with other Federal offices and teams to embed 21st century tools, teams, and practices in government operations; modernize policies; recruit tech talent for 'tours of duty'; and build

---

[14] National Science, Engineering, and Technology Policy and Priorities Act, Pub. L. No. 94-282, § 204(b)(2) (1976).

[15] *Id.* § 205(a)(1).

[16] *Id.* § 205(a)(5).

[17] *Id.* § 205(a)(7).

[18] Obama Admin. White House Archives, *Office of the Chief Technology Officer*, https://obamawhitehouse.archives.gov/administration/eop/ostp/divisions/cto.

capacity in areas such as data science, open government, open data, and other new approaches for solving challenges including policy options for upgrading [sic] service delivery."[19]

39.     The OSTP CTO launched a number of programs under the Obama Administration including the Presidential Fellows and U.S. Digital Service ("USDS") programs that sought to bring technology employees from the private sector to fix government programs such as healthcare.gov.  OAI now plans to pull USDS—once under OSTP— GSA's Technology Transformation Service, and a number of private sector technology CEOs into its "Centers of Excellence," model discussed infra in paragraphs 46 through 51.

40.     As of November 2017, the Trump Administration had not appointed any individual to serve as the director or CTO of OSTP.  This is the longest time that the OSTP has gone without a leader or mandate.

41.     OAI has essentially supplanted OSTP's role, particularly the OSTP CTO's role, in the White House.

**B.     Developing and implementing federal infrastructure policy**

42.     Along with the Department of Transportation the Department of Commerce, the Environmental Protection Agency, and the Administration's Infrastructure Council, OAI has worked to develop the government's infrastructure plan, including leading at least some portions of the plan's development.

43.     OAI has conducted daily meetings regarding its role in the development of the government's infrastructure plan.

---

[19] *Id.*

44.     OAI has consulted with constituents, mayors, governors, and congressional

leadership in developing the infrastructure plan.

45.     In November 2017, one of its leaders, Reed Cordish, explained his role at OAI to

an industry group conference and said his team had developed a detailed, 70-page memo of

infrastructure principles that had yet to be released to the public. He further noted that the memo

would be submitted to Congress and serve as a building block for lawmakers to draft an actual

legislative package.

46.     On February 12, 2018, the Administration released its Infrastructure Plan.[20] Upon

information and belief, OAI aided in the development of this plan.

C.     Establishing "Centers of Excellence" for agencies

47.     As of October, the GSA is creating an office to manage a variety of so-called

"Centers of Excellence," on behalf of OAI.

48.     These centers are intended to spread best practices to federal agencies to provide

both greater quality and consistency and would focus on IT issues like identity and

authentication, cloud computing, data access and consolidated contact centers.  Procurement

notices for GSA's new Centers of Excellence Office sought contractors who could successfully

work with several agencies at a time to drive and measure technology modernization.

49.     GSA also carried out an internal reorganization, in which it moved its Technology

Transformation Service into the Federal Acquisition Service; named the new entity Technology

Transformation Services; and created a new, politically-appointed Commissioner position in

---

[20] White House, *Legislative Outline for Rebuilding Infrastructure in America*
(2018), https://www.whitehouse.gov/wp-content/uploads/2018/02/INFRASTRUCTURE-
211.pdf.

order to be "better able to leverage its expertise and assets in support of the White House and its Office of American Innovation."[21]

50.     The directives to GSA to undertake the reorganizations described in the preceding two paragraphs came from OAI.

51.     The President has not issued any public order directing GSA to undertake the reorganizations discussed in the previous three paragraphs.

52.     The Centers of Excellence would have evaluative and directorial authority over other agencies, evaluating agencies in particular on technological areas and requiring that they implement changes.

**D.     Negotiating deals between public and private entities**

53.     On a number of occasions, OAI has engaged in negotiations with private entities for public contracts.

54.     Over the summer of 2017, for example Kushner and Cordish met with Foxconn executives who were considering building a facility in the United States (and ultimately settled on Wisconsin).  The deal was the culmination of many months of discussions between OAI and Foxconn.

55.     Kushner also assisted the VA in securing an electronic health records system contract with IT contractor Cerner.

**III.   Plaintiffs' FOIA Requests**

**A.     FWW's May 23, 2017 FOIA Request**

56.     On May 23, FWW sent a FOIA request to OAI seeking

---

[21] Press Release, GSA, GSA Merges Technology and Acquisition  (June 7, 2017), https://www.gsa.gov/about-us/newsroom/news-releases/gsa-merges-technology-and-acquisition.

all records including minutes, agendas, memoranda, documents, correspondence of, to, and from the OAI related to its authority to "launch initiatives" under the President's Memorandum dated March 27, 2017, and that reference water systems, sewer, wastewater, stormwater, water infrastructure, privatization, or public-private partnerships. According to this newspaper article, https://www.washingtonpost.com/politics/trump-taps-kushner-to-lead-a-swat-team-to-fixgovernment-with-business-ideas/2017/03/26/9714a8b6-1254-11e7-ada0-1489b735b3a3_story.html?utm_term=.0e1cef4334ab, and others, the OAI has a very large role in the new administration's governance of these issues and has been granted the authority to "develop[] 'transformative projects'" and "[i]n some cases, the office could direct that government functions be privatized, or that existing contracts be awarded to new bidders.

57.     The FOIA Request was sent to OAI, and FWW received confirmation via certified mail that FWW's request was received on March 30, 2017.

**B.     DFF's November 22, 2017 FOIA Request**

58.     On November 22, 2017, DFF sent a FOIA Request to OAI via certified mail.

59.     The FOIA Request sought the following information from OAI:

  a.   All OAI meeting agenda and minutes.

  b.   All calendars or calendar entries for Jared Kushner, Mr. Reed Cordish, or Mr. Christopher Liddell, or anyone acting on their behalf, reflecting their work related to OAI.  The search should include any calendar, paper or electronic, whether on government-issued or private devices and email accounts, used to conduct work related to OAI.

  c.   All communications related to infrastructure policy sent to or from the following people: (1) Reed Cordish, (2) Jared Kushner, (3) Richard LeFrak, (4) Steven Roth, or (5) Christopher Liddell.

60.     DFF sought all such records from March 26, 2017 to the date the search was conducted.

61.     The FOIA Request was sent to OAI, and DFF received confirmation via certified mail that DFF's request was received on November 27, 2017.

13

62.     To date, DFF has not received any acknowledgement of its FOIA request from OAI, nor has OAI produced any responsive documents.

**C.     OAI's failures to comply with FOIA**

63.     Pursuant to 5 U.S.C. § 552(a)(6)(A)(i), OAI was required to determine whether to comply with Plaintiffs' FOIA requests within twenty business days of receipt of the requests and to notify Plaintiff immediately of its determination, the reasons therefor, and the right to appeal any adverse determination. Defendant may extend that time by ten business days in the case of unusual circumstances. *See* 5 U.S.C. § 552(a)(6)(B)(i)-(iii).

64.     OAI never provided FWW any letter indicating any unusual circumstances.

65.     OAI's initial determination regarding FWW's May 23, 2017 FOIA request was due by no later than June 27, 2017.

66.     OAI never provided DFF any letter indicating any unusual circumstances.

67.     OAI's initial determination regarding DFF's November 22, 2017 FOIA request was due by no later than December 26, 2017.

## FIRST CLAIM FOR RELIEF

**Defendant Has Violated FOIA by Failing to Disclose Records Responsive to FWW's May 23, 2017 FOIA Request.**

68.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1-67 in the complaint as if fully set forth herein:

69.     Under FOIA "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).

14

70.     FWW's request reasonably described the agency records it sought.

71.     OAI has not complied with its obligations under FOIA because it has not determined whether to comply with Plaintiffs' requests by the statutory deadline. Specifically, it has not produced any records to Plaintiffs, nor has it informed Plaintiffs of the scope of records that it will produce or the scope of the records that it plans to withhold under any FOIA exemptions.

72.      There is no applicable legal justification for Defendant to withhold the requested records.

73.     Therefore, Defendant has violated FOIA by failing to disclose the requested records to the Plaintiff.

### SECOND CLAIM FOR RELIEF

**Defendant Has Violated FOIA by Failing to Disclose Records Responsive to DFF's November 22, 2017 FOIA Request.**

74.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1-73 in the complaint as if fully set forth herein:

75.     DFF's request reasonably described the agency records it sought.

76.     OAI has not complied with its obligations under FOIA because it has not determined whether to comply with Plaintiffs' requests by the statutory deadline. Specifically, it has not produced any records to Plaintiffs, nor has it informed Plaintiffs of the scope of records that it will produce or the scope of the records that it plans to withhold under any FOIA exemptions.

77.     By failing to respond to Plaintiffs' FOIA Requests within the statutorily mandated time period, OAI has violated its duties under 5 U.S.C. § 552, including, but not limited to, the

duties to conduct a reasonable search for responsive records, to take reasonable steps to release all nonexempt information, and to not withhold responsive records.

78.     There is no applicable legal justification for Defendant to withhold the requested records.

79.     Therefore, Defendant has violated FOIA by failing to disclose the requested records to the Plaintiff.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that the Court:

80.     Declare as unlawful Defendant's failure to disclose the records that FWW requested on May 23, 2017;

81.     Declare as unlawful Defendant's failure to disclose the records that DFF requested on November 22, 2017;

82.     Order Defendant to conduct searches for any and all records responsive to Plaintiffs' FOIA requests and demonstrate that it employed search methods reasonably likely to lead to the discovery of records responsive to Plaintiffs' FOIA requests;

83.     Order Defendant to produce, by a date certain, any and all nonexempt records responsive to Plaintiffs' FOIA requests and a *Vaughn* index for any responsive records withheld under claim of exemption;

84.     Enjoin Defendant from continuing to withhold any and all non-exempt records responsive to Plaintiffs' FOIA requests;

85.     Exercise close supervision over Defendant while they process Plaintiffs' request;

86.     Grant Plaintiffs an award of attorneys' fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

16

87.     Grant Plaintiffs such other relief as the Court deems just and proper.


Dated: February 15, 2018                    Respectfully submitted,

                                            /s/ Javier M. Guzman
                                            Javier M. Guzman
                                            (D.C. Bar No. 462679)
                                            Karianne M. Jones
                                            (*Pro hac vice* motion forthcoming)
                                            Democracy Forward Foundation
                                            1333 H. St. NW
                                            Washington, DC 20005
                                            (202) 448-9090

                                            jguzman@democracyforward.org
                                            kjones@democracyforward.org

                                            *Attorney for Plaintiffs Democracy Forward
                                            Foundation and Food & Water Watch, Inc.*

                                            ZACHARY B. CORRIGAN (D.C. Bar No.
                                            497557)
                                            Food & Water Watch, Inc.
                                            1616 P Street NW, Suite 300
                                            Washington, DC 20036
                                            (202) 683-2451 (phone)
                                            (202) 683-2452 (fax)

                                            zcorrigan@fwwatch.org

                                            *Attorney for Plaintiff Food & Water Watch,
                                            Inc.*