**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| DEMOCRACY FORWARD FOUNDATION, *et al.*, <br><br> Plaintiffs <br><br> v. <br><br> THE WHITE HOUSE OFFICE OF AMERICAN INNOVATION, <br><br> Defendant | Civil Action No. 18-349 (CKK) |

**MEMORANDUM OPINION**
(January 9, 2019)

Plaintiffs bring this action to compel Defendant, the White House Office of American Innovation ("OAI"), to respond to Plaintiffs' requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Compl., ECF No. 1, ¶ 1. The two Plaintiff organizations each made a FOIA request to the OAI, asking the OAI to disclose certain documents. *Id.* at ¶¶ 56, 58. The OAI failed to respond to either FOIA request, and, as a result, Plaintiffs filed suit to enforce compliance under FOIA. Defendants have moved for dismissal of Plaintiffs' Complaint, arguing that the OAI is not an "agency" subject to FOIA's disclosure requirements.

Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court GRANTS Defendant's motion. The Court concludes that Plaintiffs' Complaint fails to state a claim because, as an entity within the White House Office which does not exercise

---

[1] The Court's consideration has focused on the following documents:
- Def.'s Mot. to Dismiss, ECF No. 10 ("Def.'s Mot.");
- Pls.' Opp'n to Mot. to Dismiss, ECF No. 13 ("Pls.' Opp'n");
- Def.'s Reply in Support of Mot. to Dismiss, ECF No. 15 ("Def.'s Reply").

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

substantial authority independent of the President, the OAI is not an agency subject to the requirements of FOIA.

## I. BACKGROUND

The OAI was established within the White House Office by Presidential Memorandum in March 2017 and is led by Jared Kushner, a Senior Advisor to the President. *Id.* at ¶¶ 12, 17. The OAI was established in part to "'focus on implementing policies and scaling proven private-sector models to spur job creation and innovation'" and to "'ensure that America is ready to solve today's most intractable problems, and is positioned to meet tomorrow's challenges and opportunities.'" *Id.* at ¶ 12 (quoting Presidential Memorandum on the White House Office of American Innovation, 2017 WL 1130896 (Mar. 27, 2017) ("2017 Presidential Memorandum")). According to the Presidential Memorandum establishing the OAI, the OAI's sole mission is to "make recommendations to the President on policies and plans that improve Government operations and services, improve the quality of life for Americans now and in the future, and spur job creation." 2017 Presidential Memorandum.[2] With this mission in mind, the OAI "shall launch initiatives with a focus on innovation, coordinate implementation of any resulting plans, and create reports for the President setting forth policy recommendations. In carrying out these activities and producing these reports, the OAI shall gather information, ideas, and experiences from other parts of Government, from the private sector, and from other thought leaders and

---

[2] Plaintiffs' Complaint did not quote this language from the 2017 Presidential Memorandum. But, because Plaintiffs' Complaint referenced the 2017 Presidential Memorandum and the document is integral to Plaintiffs' claim, the Court may consider the document when deciding Defendant's motion to dismiss. *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015). Moreover, judicial notice may be taken of government documents available from reliable sources, such as this 2017 Presidential Memorandum. *See Johnson v. Comm'n on Presidential Debates*, 202 F. Supp. 3d 159, 167 (D.D.C. 2016). And, Plaintiffs do not appear to object to the Court taking judicial notice of this document. *See* Pls.' Opp'n, ECF No. 13, 18 n.6.

experts outside of the Federal Government." Compl., ECF No. 1, ¶ 14 (quoting 2017 Presidential Memorandum).

On May 23, 2017, Plaintiff Food & Water Watch, Inc., sent a FOIA request to the OAI seeking records concerning the OAI's authority to launch initiatives on issues related to water systems and more. *Id.* at ¶ 56. On March 30, 2017, the OAI notified Plaintiff that it had received the FOIA request. *Id.* at ¶ 57. Similarly, on November 22, 2017, Plaintiff Democracy Forward Foundation sent the OAI a FOIA request seeking documents related to the OAI's agendas, minutes, calendar entries, and communications on infrastructure. *Id.* at ¶¶ 58-59. On November 27, 2017, the OAI confirmed that it had received Plaintiff's request. *Id.* at ¶ 61.

Under FOIA, "'each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.'" *Id.* at ¶ 69 (quoting 5 U.S.C. § 552(a)(3)(A)). With some exceptions, an agency must determine whether or not to comply with a party's FOIA request within 20 business days of the receipt of the request and immediately notify the party of its determination. *Id.* at ¶ 63 (citing 5 U.S.C. § 552(a)(6)(A)(i)). Despite this obligation, the OAI did not notify Plaintiffs of its determination within 20 days. *Id.* at ¶¶ 64-67. And, as of this date, the OAI has not responded to Plaintiffs' FOIA requests. *Id.* In their Complaint, Plaintiffs ask that the Court compel the OAI to comply with the requirements of FOIA. *Id.* at ¶¶ 80-87.

In response, Defendant argues that the Court should dismiss Plaintiffs' Complaint because the OAI is not an agency subject to the requirements of FOIA. Defendant contends that the OAI is not an agency for purposes of FOIA because it is an entity within the White House Office and because it does not exercise substantial authority independent of the President. The

Court agrees and concludes that Plaintiffs have failed to state a claim under FOIA because the OAI is not an agency subject to FOIA.

## II. LEGAL STANDARD

Defendant brings this motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).[3] Def.'s Mot., ECF No. 10, 3-4. Rule 12(b)(6) provides that a party may challenge the sufficiency of a complaint on the grounds it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. Pro. 12(b)(6). When evaluating a motion to dismiss for failure to state a claim, the district court must accept as true the well-pleaded factual allegations contained in the complaint. *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009), *cert. denied*, 559 U.S. 1039 (2010). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqubal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In deciding a motion to dismiss under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and information about which the Court may take judicial notice. *Abhe v. Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

---

[3] In the alternative, Defendant requests dismissal under Rule 12(b)(1) for lack of subject-matter jurisdiction. Def.'s Mot., ECF No. 10, 3 n.3. But, courts within this Circuit generally rely on Rule 12(b)(6) when determining whether or not a government entity is an agency for purposes of FOIA. *See, e.g., Citizens for Responsibility & Ethics in Washington v. Office of Admin.*, 566 F.3d 219, 225 (D.C. Cir. 2009). Accordingly, this Court will assess Defendant's motion under the Rule 12(b)(6) standard.

## III. DISCUSSION

Defendant argues that Plaintiffs' Complaint should be dismissed because it fails to state a claim under FOIA as the OAI is not an agency subject to FOIA's disclosure requirements. The Court agrees. The OAI is not an agency subject to FOIA because it is within the White House Office and because it does not exercise substantial authority independent of the President.

Under FOIA, only "agenc[ies]" are required to "make available to the public" various specified types of information. 5 U.S.C. § 552(a). Congress originally defined an agency, for purposes of FOIA, as "'each authority of the Government of the United States,'" subject to certain exceptions which are not relevant to this case. *Armstrong v. Exec. Office of the President*, 90 F.3d 553, 557 (D.C. Cir. 1996) (quoting 5 U.S.C. § 551(1)). In its 1971 opinion in *Soucie v. David*, 448 F.2d 1067 (D.C. Cir. 1971), the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") addressed the question of whether the Office of Science and Technology, a component of the Executive Office of the President ("EOP"), was an agency subject to FOIA. 448 F.2d at 1070-71. In concluding that the Office was an agency subject to FOIA, the D.C. Circuit interpreted Congress's definition of "agency" to include "any administrative unit with substantial independent authority in the exercise of specific functions." *Id.* at 1073. The Court went on to conclude that the Office was an agency because its "sole function [was not] to advise and assist the President." *Id.* at 1075.

In 1974, Congress amended FOIA's definition of agency to cover any "executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. § 552(f)(1). This definition "was not, however, meant to cover 'the President's immediate personal staff or units in

the Executive Office whose sole function is to advise and assist the President.'" *Armstrong*, 90 F.3d at 558 (quoting H.R. Conf. Rep. No. 93-1380, at 14 (1974)). In drafting FOIA's new "agency" definition, Congress intended to codify the D.C. Circuit's decision in *Soucie*. *Id.* ("That the Congress intended to codify *Soucie* is clear enough." (citing *Meyer v. Bush*, 981 F.2d 1288, 1291 (D.C. Cir. 1993))).

This Court must determine whether or not the OAI fits within the Congressional definition of "agency" as it has been interpreted by the Supreme Court and the D.C. Circuit. Defendant has two arguments as to why the OAI is not an agency for purposes of FOIA. First, Defendant argues that the OAI is categorically not an agency because it is an entity within the White House Office. Second, Defendant agues that the OAI is not an agency because it does not exercise substantial authority independent of the President. The Court will address each argument.

### A. The OAI's Inclusion within the White House Office

Defendant argues, and the Court concludes, that entities within the White House Office are not agencies within the meaning of FOIA. And, it is undisputed that the OAI is part of the White House Office. Accordingly, the OAI is not an agency for purposes of FOIA.

In *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136 (1980), the Supreme Court concluded that entities within the Office of the President, also referred to as the White House Office, are not agencies under FOIA. In *Kissinger*, the Supreme Court invalidated a FOIA request for certain notes taken by then-Assistant to the President for National Security Affairs, Henry Kissinger. 445 U.S. at 158. The Court concluded that Mr. Kissinger's notes were not agency records within the meaning of FOIA. *Id.* at 156. The Court cited the Conference Report of the 1974 FOIA Amendments for the proposition that "'the President's immediate

personal staff or units in the Executive Office whose sole function is to advise and assist the President' are not included within the term 'agency' under the FOIA." *Id.* (citing H.R. Conf. Rep. No. 93-1380, p. 15 (1974)). Based on expressed Congressional intent, the Court explained that, while entities within the EOP are subject to FOIA, "[t]he legislative history is unambiguous … in explaining that the 'Executive Office' does not include the Office of the President." *Id.* In other words, because the Office of the President, also known as the White House Office, has the sole function of advising and assisting the President, the White House Office is not included within FOIA's scope. *See Sculimbrene v. Reno*, 158 F. Supp. 2d 26, 29 (D.D.C. 2001) ("[T]he Supreme Court has held that the FOIA definition of 'agency' does not include the 'Office of the President,' also known as the White House Office.").

It is undisputed that the OAI is part of the White House Office. Compl., ECF No. 1, ¶ 16; *see also* 2017 Presidential Memorandum. As *Kinssinger* explained, entities within the White House Office are not agencies for purposes of FOIA. 445 U.S. at 156. Accordingly, the Court concludes that the OAI is not an agency subject to Plaintiffs' FOIA requests.

However, Plaintiffs argue that, even if the OAI is part of the White House Office, *Kissinger* did not establish "a bright-line test, and instead focuses on the office's functions, rather than its form or location." Pls.' Opp'n, ECF No. 13, 12-13. According to Plaintiffs, the inclusion of the OAI within the White House Office does not categorically preclude the OAI from being an agency subject to FOIA.

The Court concludes that D.C. Circuit precedent provides no support for Plaintiffs' argument. In *National Security Archive v. Archivist of the United States*, 909 F.2d 541 (D.C. Cir. 1990), the D.C. Circuit stated that "[t]he Supreme Court has made clear that the Office of the President is not an 'agency' for purposes of the FOIA." 909 F.2d at 545 (citing *Kissinger*, 445

U.S. at 156). The Circuit Court went on to find that because the Counsel to the President was an entity within the White House Office, the Counsel to the President was not an agency which could be required to make disclosures under FOIA. *Id.* Similarly, in *Alexander v. Federal Bureau of Investigation*, 456 F. App'x 1 (D.C. Cir. 2011) (unpublished), the Circuit Court stated that "*Kissinger* expressly held that the Office of the President … is not subject to FOIA." 456 F. App'x at 1. The *Alexander* Court proceeded to conclude that the White House Office of Personnel Security and the White House Office of Records Management, both entities within the White House Office, were not agencies subject to disclosure under FOIA or the analogous Privacy Act. *Id.* Again, in *Meyer v. Bush*, 981 F.2d 1288 (D.C. Cir. 1993), the Circuit Court explained that the President's "immediate personal staff" are exempted from FOIA "without a careful examination of [their] function." 981 F.2d at 1293 (internal quotation marks omitted). The Circuit Court clarified that the President's "immediate personal staff" encompasses "at least those … individuals employed in the White House Office." *Id.* at 1293 n.3; *see also Id.* at 1310 ("We and the Supreme Court have interpreted 'immediate personal staff' to refer to the staff of … the White House Office, one of the fourteen units within the Executive Office of the President, and accordingly have granted FOIA exemptions to persons or offices within the White House Office without applying the 'sole function' test.") (Wald, J., dissenting). In other words, entities within the White House Office are not agencies subject to FOIA regardless of how they function.

The D.C. Circuit has repeatedly interpreted *Kissinger* to mean that entities within the White House Office are categorically not agencies for purposes of FOIA. And, Plaintiffs have failed to cite any case in which an entity within the White House Office has been held to be an agency under FOIA. Based on FOIA's "agency" definition and this Circuit's precedent, the

Court concludes that, because the OAI is an entity within the White House Office, the OAI is not an agency subject to disclosure requirements under FOIA. Accordingly, Plaintiffs' Complaint is DISMISSED as it does not state a claim for which relief may be granted.

### B. Substantial Independence from the President

The Court has already determined that the OAI is not an agency for purposes of FOIA because it is an entity within the White House Office. Alternatively, the Court further concludes that, even if the OAI's position within the White House Office did not categorically bar it from being an agency, the OAI is not an agency for purposes of FOIA because it does not exercise substantial authority independent of the President.

The D.C. Circuit has offered various tests for determining whether an entity within the EOP, such as the OAI, constitutes an agency for purposes of FOIA. *United to Protect Democracy v. Presidential Advisory Comm'n on Election Integrity*, 288 F. Supp. 3d 99, 114-115 (D.D.C. 2017). In *Soucie*, the D.C. Circuit offered two possible tests for determining whether an EOP component is an agency subject to FOIA: (1) whether the entity exercises "substantial independent authority," and (2) whether the entity's "sole function [is] to advise and assist the President." 448 F.2d at 1073, 1075; *see also Armstrong*, 90 F.3d at 558. Following *Soucie*, the D.C. Circuit issued its opinion in *Meyer*, which "managed to harmonize" the two *Soucie* criteria "by using a three-factor test to determine the status under FOIA of a unit in the Executive Office of the President." *Armstrong*, 90 F.3d at 558. Specifically, the *Meyer* Court determined that, in "apply[ing] *Soucie* to those who help the President supervise others in the executive branch ... it is necessary to focus on three interrelated factors ... how close operationally the group is to the President, what the nature of its delegation from the President is, and whether it has a self-contained structure." 981 F.2d at 1293.

Following *Meyer*, the D.C. Circuit has distilled the analysis, explaining that regardless of how "the test has been stated, common to every case in which [the D.C. Circuit has] held that an EOP unit is subject to FOIA has been a finding that the entity in question 'wielded substantial authority independently of the President.'" *Citizens for Responsibility and Ethics in Washington*, 566 F.3d at 222-23 (quoting *Sweetland v. Walters*, 60 F.3d 852, 854 (D.C. Cir. 1995)). Likewise, the D.C. Circuit has "consistently refused to extend FOIA to an EOP unit that lacks substantial independent authority." *Id.* at 223.

Accordingly, in determining whether or not the OAI is an agency for purpose of FOIA, the Court's analysis will focus on whether or not the OAI "wielded substantial authority independently of the President." *Id.* at 222-3 (internal quotation marks omitted). And, the Court finds that it did not.

Plaintiffs argue that they have pleaded factual allegations that plausibly establish that the OAI exercises substantial authority independent from the President and is therefore subject to FOIA. Plaintiffs arguments focus on OAI's structure and the tasks which have been delegated to the OAI. The Court will address each argument in turn.

First, Plaintiffs argue that OAI exercises substantial authority independent from the President because of its self-contained structure. Plaintiffs allege that the OAI is made up of a hierarchy of several staff members who meet regularly and play specific roles. Plaintiffs further contend that nothing indicates that the President is directly involved in the OAI's structure. Compl., ECF No. 1, ¶¶ 17-22; *see Armstrong*, 90 F.3d at 560 (finding that the National Security Council "has a structure sufficiently self-contained that the entity could exercise substantial independent authority").

In evaluating the OAI's structure, the Court concludes that Plaintiffs downplay the proximity between the OAI and the President. In the 2017 Presidential Memorandum establishing the OAI, the President ordered that the OAI would be headed by Jared Kushner, the Senior Advisor to the President. 2017 Presidential Memorandum. And, the remaining named members of the OAI are all Assistants, Senior Advisors, or Senior Counselors to the President or Vice President. *Id.* The overwhelming and exclusive presence of White House staff on the OAI casts doubt on the entity's independence from the President. *See Meyer*, 981 F.2d at 1297 (explaining that if the President "had used senior White House staff personnel as his Task Force members, FOIA would not apply [to the Task Force]").

Moreover, according to the OAI's founding document, the President plays a crucial and authoritative role in the OAI's reason for being. The OAI's sole Mission is to "make recommendations to the President on policies and plans that improve the Government operations and services, improve the quality of life for Americans now and in the future, and spur job creation." 2017 Presidential Memorandum. Given that the only mission of the OAI is to advise the President, Plaintiffs' unsupported and conclusory allegations that "the President [does not] need[] to approve of OAI's policies or initiative" and that "the President [does not] regularly consult with or interact with OAI" are not credible. Compl., ECF No. 1, ¶ 22; *See Iqubal*, 556 U.S. at 678 (explaining that labels and conclusions are insufficient to state a claim for which relief may be granted). Accordingly, the Court concludes that the OAI's structure does not support Plaintiffs' contention that the OAI is an agency with substantial authority independent from the President.

In addition to their claims about the structure of the OAI, Plaintiffs argue that the OAI's responsibilities demonstrate that it wields substantial authority independent from the President.

In their Complaint, Plaintiffs focus on the responsibilities of the OAI as outlined in the OAI's founding documents. According to the 2017 Presidential Memorandum, the OAI "'shall launch initiatives with a focus on innovation, coordinate implementation of any resulting plans, and create reports for the President setting forth policy recommendations.'" Compl., ECF No. 1, ¶ 14 (quoting 2017 Presidential Memorandum). Quoting a press release on the OAI, Plaintiffs further allege that the OAI has the responsibility of creating "'task forces to focus on initiatives such as modernizing Government services and information technology, improving services to veterans, creating transformational infrastructure projects, implementing regulatory and process reforms, creating manufacturing jobs, addressing the drug and opioid epidemic, and developing 'workforce of the future' programs.'" *Id.* at ¶ 15 (quoting Press Release, President Donald J. Trump Announces the White House Office of American Innovation (OAI), The White House (Mar. 27, 2017), https://www.whitehouse.gov/briefings-statements/president-donald-j-trump-announces-white-house-office-american-innovation-oai/ ("2017 White House Press Release")). According to Plaintiffs, these statements make clear that the OAI wields authority independent from the President.

However, these statements regarding the OAI must be read in context. While the OAI is given many responsibilities, these responsibilities fall under the sole mission of the OAI which is to "make recommendations to the President on policies and plans that improve government operations and services, improve the quality of life for Americans now and in the future, and spur job creation." 2017 White House Press Release[4]; 2017 Presidential Memorandum. If all of

---

[4] Similar to the 2017 Presidential Memorandum, Plaintiffs' Complaint quotes from certain portions of the 2017 White House Press Release but does not quote this portion. Compl., ECF No. 1, ¶ 15 n.4. Because Plaintiffs' Complaint references the 2017 Press Release and the document is an important part of Plaintiffs' claim, the Court may consider the document when deciding Defendant's motion to dismiss. *See Banneker Ventures*, 798 F.3d at 1133; *see also*

OAI's responsibilities are cabined within its overarching mission to make recommendations to the President, it is not clear how the OAI could "wield[] substantial authority independently of the President." *Citizens for Responsibility and Ethics in Washington*, 566 F.3d at 222-23.

The OAI's lack of independence from the President is evident in the tasks which Plaintiffs claim that the President has in fact delegated to the OAI. Plaintiffs allege that the OAI has been tasked with at least four responsibilities: evaluating and directing the modernization of federal technology systems, developing and implementing a federal infrastructure plan, managing "Centers of Excellence," and negotiating deals between public and private partners. But, the Court determines that none of these responsibilities establish the OAI's substantial independence from the President.

First, Plaintiffs allege that the OAI is responsible for evaluating and directing the modernization of federal technology systems. Plaintiffs contend that the OAI "launched" the American Technology Counsel ("ATC"), which evaluates federal technology programs and released a report prescribing implementation plans for improving those programs. Compl., ECF No. 1, ¶¶ 25-31. Additionally, Plaintiffs allege that the OAI assisted in drafting the Modernizing Government Technology Act which was later passed by Congress. *Id.* at ¶ 32. Plaintiffs also contend that the OAI has worked with the Department of Veterans Affairs to address interoperability issues between the Department's medical records systems and outside systems. *Id.* at ¶¶ 33-35. And finally, Plaintiffs allege that the OAI has supplanted the role of the White House Office of Science and Technology Policy ("OSTP"), which had previously been

---

*Supra* fn.2. Moreover, the Court notes that it may take judicial notice of the White House Press Release as it is a government document available from a reliable source. *See Johnson*, 202 F. Supp. 3d at 167; *see also Supra* fn.2. And, Plaintiffs do not appear to object to the Court taking judicial notice of this document. *See* Pls.' Opp'n, ECF No. 13, 18 n.6.

responsible for evaluating and modernizing federal technology systems. *Id.* at ¶¶ 36-41. However, the Court finds that these allegations fail to establish that the OAI has been tasked with authority substantially independent from the President.

Plaintiffs cite some language supporting their assertion that the OAI "launched" the ATC. *See Id.* at ¶ 25 n.5 (citing The White House, The American Technology Council Summit to Modernize Government Services (June 21, 2017) https://www.whitehouse.gov/articles/american-technology-council-summit-modernizegovernment-services/ ("ATC Press Release") ("[T]he White House Office of American Innovation launched the American Technology Council.")). But, the same report which announced the launch of the ATC also discussed its inaugural summit at which "President Donald J. Trump and many of his senior advisors hosted" members of the ATC. ATC Press Release.[5] The fact that the President, not the OAI, is credited with hosting the inaugural meeting is unsurprising as it was the President that created the ATC through Executive Order. *See* E.O. 1374, 82 Fed. Reg. 20811 (Apr. 28, 2017).[6] Accordingly, the report's use of the word "launch[]" does not establish the OAI's substantial independence from the President.

---

[5] The Court takes judicial notice of this report as it was incorporated by reference into Plaintiffs' Complaint. Compl., ECF No. 1, ¶ 25 n.5. Even if this document was not incorporated into Plaintiffs' Complaint, the Court could take judicial notice as it is a government document from a reliable source. *See Supra* fn.2. And, Plaintiffs do not appear to object to the Court taking judicial notice of this document. *See* Pls.' Opp'n, ECF No. 13, 18 n.6.

[6] The Court can take judicial notice of facts in the public record, such as government documents, if their accuracy can be readily determined from reliable sources. *Kaspersky Lab, Inc. v. U.S. Dep't of Homeland Sec.*, 909 F.3d 446, 464 (D.C. Cir. 2018). The Court concludes that facts included in Executive Orders are the type of facts of which the Court may take judicial notice. *See Dennis v. United States*, 339 U.S. 162, 169 (1950) (explaining that the Court could "[o]f course" take notice of a particular Executive Order relevant to the case). And, Plaintiffs do not appear to object to the Court taking judicial notice of this document. *See* Pls.' Opp'n, ECF No. 13, 18 n.6. Accordingly, the Court takes judicial notice of E.O. 1374 in considering Defendant's motion to dismiss.

The ATC's Report was also initiated by Presidential Executive Order directing the Secretaries of various Departments and agencies, not including the OAI, to "provide a report to the President … with findings and recommendations regarding how to support the growth and sustainment of the Nation's cybersecurity workforce in both the public and private sectors." E.O. 13800 § 1(c)(vi)(B), 82 Fed. Reg. 22391, 22393 (May 11, 2017).[7] Accordingly, neither the development of the ATC nor the drafting of the ATC's Report provides support for Plaintiffs' contention that the OAI exercises substantial independence from the President.

Moreover, even if the OAI had been responsible for drafting the Report, it is not clear which portions of the Report are binding as Plaintiffs allege. While the Report does contain some language suggesting that portions of it are binding, the Report's preface states only that it "outlines the current and envisioned state of Federal IT, and it provides specific recommendations to jumpstart a new wave of modernization efforts." *See* Report to the President on Federal IT Modernization, 2, available at https://itmodernization.cio.gov/assets/report/ Report%20to%20the%20President%20on%20IT%20Modernization%20-%20Final.pdf.[8] Rather than mandating changes for other agencies, the Report's preface indicates that the Report is meant to provide recommendations. And, many of those recommendations specifically request that "the President direct the implementation of the plan outlined" by the Report. *See, e.g., Id.* at 9, 12, 16. Merely providing policy recommendations for the President to direct does not establish the substantial independence of the OAI. *See Rushforth v. Council of Econ. Advisers*, 762 F.2d

<hr />

[7] For the reasons previously explained, the Court takes judicial notice of this Executive Order. *See Supra* fn.5.

[8] This Report was directly referenced and cited in Plaintiffs' Complaint. *See* Compl., ECF No. 1, ¶ 27 n.6. Accordingly, the Court can take judicial notice of its contents. Moreover, the Court can take judicial notice of this Report because it is a government document from a reliable source. *See Supra* fn.2. And, Plaintiffs do not appear to object to the Court taking judicial notice of this document. *See* Pls.' Opp'n, ECF No. 13, 18 n.6.

1038, 1043 (D.C. Cir. 1985) (explaining that the Council of Economic Advisers was not an agency because its responsibility to evaluate federal programs was connected to its responsibility to make recommendations to the President).

In arguing that the OAI's responsibility for evaluating and directing the modernization of federal technology systems establishes the OAI's substantial independence, Plaintiffs also highlight the OAI's work drafting the Modernizing Government Technology Act. But, Plaintiffs' contention that the OAI assisted the President in drafting this legislation is similarly unavailing. Providing advice and recommendations to the President in drafting legislation is not a responsibility which affords an entity substantial independence. Rather, assistance in drafting legislation is the sort of responsibility which would be given to an entity whose role is to assist and advise the President. *See Soucie*, 448 F.2d at 1075 (explaining that an entity is not an agency if its sole function is to assist the President).

Plaintiffs' reliance on the OAI's work with the Department of Veterans Affairs to address interoperability issues is also misplaced. Assuming that the OAI did "work with" the Department, Plaintiffs fail to allege that the OAI's actions were taken independent of the President or that the OAI did more than assist the Department in implementing the President's initiatives. *See Armstrong*, 90 F.3d at 561 (explaining that "to the extent that the NSC assists the President in coordinating the activities of the various agencies with national security responsibilities, it exercises no authority of its own").

Finally, Plaintiffs' assertion that the OAI has supplanted the OSTP is conclusory. Plaintiffs provide no support for the contention that the OAI has taken over the "independent" functions which were previously exercised by the OSTP. And, the Court will not assume that the

OAI has taken over those "independent" functions, especially given that the OAI's sole mission is to "make recommendations to the President." 2017 Presidential Memorandum.

In addition to the OAI's alleged responsibility for evaluating and directing the modernization of federal technology systems, Plaintiffs also contend that the OAI's role in developing and implementing the federal infrastructure plan demonstrates that the OAI wields substantial independence from the President. Compl., ECF No. 1, ¶¶ 42-46. Plaintiffs allege that, in concert with the Department of Transportation, the Department of Commerce, the Environmental Protection Agency, and the Infrastructure Council, the OAI has "worked to develop the government's infrastructure plan, including leading at least some portions of the plan's development." *Id.* at ¶ 42.

But, even if the Court credits Plaintiffs' allegation that the "OAI aided in the development" of the federal infrastructure plan, participation in that task does not establish substantial independence from the President. *Id.* at ¶ 46. After all, according to the plan itself which was referenced in Plaintiffs' Complaint, the White House, not the OAI released the plan. Compl., ECF No. 1, ¶ 46 n.20 (citing White House, Legislative Outline for Rebuilding Infrastructure in America (2018), https://www.transportation.gov/sites/dot.gov/ffile/docs/briefing-room/304441/legoutline.pdf).[9] Again, participating in developing and drafting legislation and policy released by the White House does not establish independence from the President. If anything, assisting the White House in developing policies such as the federal infrastructure plan strengthens the argument that the OAI's primary function is to assist and

---

[9] In addition to being incorporated by reference in Plaintiffs' Complaint, the Court may take judicial notice of this plan because it is a government document from a reliable source. *See Hamilton v. Paulson*, 542 F. Supp. 2d 37, 52 n.15 (D.D.C. 2008), *rev'd on other grounds*, 666 F.3d 1344 (D.C. Cir 2012); *see also Supra* fn.2. And, Plaintiffs do not appear to object to the Court taking judicial notice of this document. *See* Pls.' Opp'n, ECF No. 13, 18 n.6.

advise the President. *See Meyer*, 981 F.2d at 1298 (finding that a committee which made recommendations to the President "concerning significant proposed regulations" was not an agency under FOIA).

Third, Plaintiffs argue that the OAI's work with the "Centers of Excellence" establishes that the OAI is substantially independent from the President. Compl., ECF No. 1, ¶¶ 47-52. The Centers of Excellence are used to spread best practices between federal agencies in order to improve quality and consistency in technology. *Id.* at ¶ 48. Plaintiffs allege that the Centers of Excellence "have evaluative and directorial authority over other agencies." *Id.* at ¶ 52. Plaintiffs contend that the OAI's authority over the Centers of Excellence establishes the OAI's independence.

But, Plaintiffs fail to name any source granting the OAI authority over the Centers of Excellence. Plaintiffs admit that the General Services Administration ("GSA") created the Centers of Excellence. *Id.* at ¶ 47. While Plaintiffs allege that the OAI directed the GSA to create the Centers for Excellence, Plaintiffs provide no support for this conclusory allegation. Plaintiffs further allegation that the OAI directed the GSA to undertake other reorganizations, such as creating the Technology Transformation Services and establishing a new Commissioner, similarly fails. *Id.* at ¶¶ 49-50. According to the GSA Press Release cited in Plaintiffs' Complaint, the GSA decided to undertake these reorganizations in order to be "[c]onsistent with [its] vision" of "being a leading force in the campaign to modernize the federal government." Press Release, GSA, GSA Merges Technology and Acquisition (June 7, 2017) https://www.gsa.gov/about-us/newsroom/news-releases/gsa-merges-technology-and-acquisition (cited in Compl., ECF No. 1, ¶ 49 n.21).[10] While the GSA acknowledges that the reorganization

---

[10] This document was cited and relied upon in Plaintiffs' Complaint. *See* Compl., ECF No. 1, ¶

will make it "better able to leverage its expertise and assets in support of the White House and its Office of American Innovation," nowhere does the GSA claim that the reorganization was directed or managed by the OAI. *Id.* And, the GSA's statement that the reorganization was conducted in order to be "[c]onsistent with [its] vision" implies that the reorganization was undertaken on the GSA's own initiative. *Id.*

Finally, Plaintiffs argue that the OAI's responsibility for negotiating deals between public and private entities demonstrates substantial independence from the President. Compl., ECF No. 1, ¶¶ 53-55. Plaintiffs allege that the OAI has engaged in multiple negotiations with private entities, including Foxconn and IT Contractor Center. *Id.*

But, nowhere do Plaintiffs allege that the OAI engaged in these negotiations without the knowledge and consent of the President. Moreover, Plaintiffs do not allege that the OAI has acquisition authority independent from the President, nor do they reference any source providing the OAI with such authority. Based on the claims in Plaintiffs' Complaint, it is not even clear what role the OAI played in these alleged negotiations. Plaintiffs contend that Jared Kushner and Reed Cordish met with Foxconn executives who were considering buying a facility in the United States. *Id.* at ¶ 54. But, Mr. Kushner is a Senior Advisor to the President and Mr. Cordish was an Assistant to the President at the time. Because Mr. Kushner and Mr. Cordish could have been operating in their capacities as White House staff, this allegation does not establish the independence of the OAI. The same is true for Plaintiffs' example involving Mr. Kushner's negotiations with IT Contractor Center. *Id.* at ¶ 55. As Mr. Kushner is also a Senior Advisor to

---

49 n.21. Additionally, this document is a government document from a reliable source which is subject to judicial notice. *See Hamilton*, 542 F.Supp.2d at 52 n.15. And, Plaintiffs do not appear to object to the Court taking judicial notice of this document. *See* Pls.' Opp'n, ECF No. 13, 18 n.6. Accordingly, the Court takes judicial notice of this document. *See Supra* fn.2.

the President, his participation in the negotiation does not support the substantial independence of the OAI.

Plaintiffs' Complaint fails to establish the OAI's substantial independence from the President based on the OAI's structure and responsibilities. This failure is unsurprising given that the OAI has little in common with the three entities within the EOP that the D.C. Circuit has previously held to be agencies for purposes of FOIA and analogous statutes.

First, the Office of Science and Technology, which the D.C. Circuit held to be an agency under FOIA exercised more independent authority than the OAI. In deciding that the Office was an agency, the D.C. Circuit noted that "[t]he one house of Congress that explicitly considered the plan creating the [Office] clearly contemplated that the [Office] would function as a distinct entity and not merely as part of the President's staff." *Soucie*, 448 F.2d at 1074. The Circuit Court also considered that the Office had the authority to independently evaluate federal programs and that Congress, not just the President, retained control over the information on federal programs accumulated by the Office. *Id.* at 1075.

Similarly, the OAI does not have the statutory authority or the independent responsibilities similar to the Council on Environmental Quality. In *Pacific Legal Foundation v. Council on Environmental Quality*, 636 F.2d 1259 (D.C. Cir. 1980), the D.C. Circuit held that the Council was an agency for purposes of the Sunshine Act, which incorporates the definition of "agency" from FOIA. 636 F.2d at 1263. The Circuit Court explained that the Council was created by legislative action and has the statutory authority to "conduct environmental research and to monitor environmental trends." *Id.* at 1262. Additionally, Executive Orders have expanded the responsibilities of the Council to include coordinating federal programs on environmental quality and directly issuing guidelines to federal agencies for the preparation of

environmental impact statements. *Id.* The Council also publishes and revises the national

contingency plan for the removal of oil and hazardous substances from navigable waters. *Id.*

Third, the OAI does not exercise the same independence from the President as does the

Defense Nuclear Facilities Safety Board, which the D.C. Circuit concluded was an agency for

purposes of FOIA and the analogous Sunshine Act. *Energy Research Found. v. Def. Nuclear*

*Facilities Safety Bd.*, 917 F.2d 581, 581 (D.C. Cir. 1990). The D.C. Circuit highlighted the fact

that the Board was established by Congress and has the ability to review and evaluate nuclear

standards, conduct investigations at nuclear facilities, and make recommendations to the

Secretary of Energy. *Id.* at 582. In completing these tasks, the Board has the independent

authority promulgate its own regulations, require the Secretary of Energy to report to it classified

information, conduct hearings, compel testimony, hire staff, and obtain assistance from the

Nuclear Regulatory Commission. *Id.* at 582.

Based on the above analysis, even if the OAI were not categorically barred from agency

status under FOIA based on its position within the White House Office, the Court finds that the

OAI is still not an agency because it does not exercise substantial authority independent of the

President. Accordingly, the OAI is not subject to FOIA, and Plaintiffs' Complaint requesting that

the Court compel the OAI to comply with FOIA fails to state a claim on which relief can be

granted.

Because the Court has determined that Plaintiffs' Complaint fails to state a claim on

which relief can be granted, the Court also concludes that Plaintiffs' request for jurisdictional

discovery is not appropriate. Plaintiffs request jurisdictional discovery to determine whether or

not the OAI falls within the jurisdiction of FOIA. Pls.' Opp'n, ECF No. 13, 23-24. But, even

assuming that this case presents a jurisdictional problem, district courts have broad discretion in

their resolution of jurisdictional discovery requests. *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1093 (D.C. Cir. 2008). Here, Plaintiffs have not made the required "detailed showing" of what discovery they want to conduct and what results such discovery would produce. *NBC-USA Housing, Inc., Twenty-Six v. Donovan*, 774 F. Supp. 2d 277, 295 (D.D.C. 2011). Moreover, the Court concludes that jurisdictional discovery would not produce a different result in this case as D.C. Circuit precedent is clear that an entity within the White House Office, such as the OAI, is not an agency under FOIA. And, Plaintiffs have not set forth plausible allegations that the OAI is different than other entities within the EOP with the purpose of advising and assisting the President which the courts have concluded are not agencies for purposes of FOIA.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss. Plaintiffs failed to state a claim for which relief can be granted. The OAI is not an agency subject to FOIA as it is an entity within the White House Office and it does not exercise substantial authority independent of the President. Accordingly, Plaintiffs' Complaint is DISMISSED WITH PREJUDICE.

An appropriate Order accompanies this Memorandum Opinion.

Dated: January 9, 2019

                           _____/s/_____
                           COLLEEN KOLLAR-KOTELLY
                           United States District Judge